UNITED STATES ex rel. Jack
**PERMISON, Plaintiff,**

v.

**SUPERLATIVE TECHNOLOGIES,
INC., Defendant.**

**No. CIV.A. 1:06–CV–729.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 26, 2007.

Rebekah A. Miller, Ashcraft & Gerel LLP, Washington, DC, for Plaintiff.

Richard W. Sponseller, United States Attorney's Office, Alexandria, VA, for Interested Party.

## ORDER

ELLIS, District Judge.

At issue in this False Claims Act [1] action is whether the complaint, recently unsealed after the government declined to proceed with the action, should now be resealed because the relator, who wishes to nonsuit the matter, fears retaliation from his former employer and damage to his former employer's reputation if the complaint remains in the public record. Because the relator's reasons for resealing do not overcome the strong presumption in favor of public disclosure of court documents, the motion to reseal must be denied.

### I.

Relator Jack Permison ("Permison") was employed by defendant, Superlative Technologies, Inc. ("Supertech"), a federal government contractor, as a Technical Project Manager on Contract No. GS–35F–4958H between Supertech and the United States Defense Contract Management Agency ("DCMA"). Pursuant to this contract, Supertech undertook to develop a computer software program called Defense Industrial Base Predictive Analysis System ("DIBPAS"), designed to enable the DCMA to analyze companies on the DCMA's Critical Asset List ("CAL") to determine their suitability for particular Department of Defense contracts. The CAL is a classified document listing the names of companies considered essential to the government's ability to fight a war. By using predictive modeling, the DIBPAS was designed to notify the DCMA when a company on the CAL encountered a situation that would jeopardize its ability to perform the activities required by the government. DIBPAS accomplishes this by monitoring various documents of CAL companies obtained from Dun & Bradstreet (an online provider of business information), EDGAR Online (the Securities and Exchange Commission website), and Google.

1. 31 U.S.C. § 3729 *et seq.*

Permison's *qui tam* complaint alleges essentially four instances of wrongdoing by Supertech in connection with DIBPAS. First, he alleges that the software program, as designed, relies on data collection services provided by Google for which Supertech has not paid, despite the fact that such commercial use requires a license. In particular, Permison argues that Supertech intentionally deceived the government by concealing its failure to pay Google for a license consequently exposing the government to "massive" potential liability should Google discover this unlicensed use. Second, Permison alleges that Claude Speed, Program Manager for Supertech, has begun offering the DIBPAS program for sale on the commercial market under the name "Red Flag Predictive Analysis Solutions" ("Red Flag") without obtaining the government's permission. Specifically, Speed allegedly has used the Dun & Bradstreet and EDGAR Online licenses purchased on the government's behalf in marketing "Red Flag" without paying the government for this use. Third, Permison alleges that Supertech inappropriately negotiated with and then hired William Ennis, who at the time of the hiring was the government's contract monitor on the Supertech contract. Finally, Permison claims that Supertech retaliated against him—first by failing to award him a bonus to which he claims he was entitled and ultimately by firing him—for raising these allegations in communications with supervisors.

On June 22, 2006, approximately four months after his termination, Permison filed this complaint on behalf of the United States seeking damages under the False Claims Act, 31 U.S.C. § 3729 *et seq.* Pursuant to the procedural requirements of the Act, Permison served a copy of the complaint on the government, which then had sixty days to decide whether to intervene and proceed with the action. *See* 31 U.S.C. § 3730(b)(2). As required, the complaint was filed *in camera* and remained under seal for the period during which the government considered whether to intervene. *Id.* The government sought and obtained three extensions of time to consider whether to intervene, ultimately electing not to do so, at which point the complaint was unsealed. One week after the order unsealing the complaint issued, Permison filed a motion to dismiss the complaint pursuant to Rule 41(a), Fed. R.Civ.P., and, at the same time, moved for an order resealing the complaint on the grounds (i) that he feared retaliation by Supertech should his identity be revealed and (ii) that public disclosure of his allegations would damage Supertech's reputation. The motion for voluntary dismissal was granted for reasons stated from the Bench. What remains, then, is the question of whether the complaint should be resealed.

## II.

■ Because no published decision squarely on point has been found, analysis properly begins with recognition of the general and well-settled principle that the public has a presumptive common law right of access to court documents. *See Nixon v. Warner Comms.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (recognizing public's presumptive right of access to court documents). This important principle underlies and animates Fourth Circuit precedent on the requirements for sealing court filings. Thus, in this Circuit, before court papers may be sealed from the public,

(i) public notice of the request to seal must be given to allow interested parties a reasonable opportunity to object,

(ii) the district court must consider whether there are appropriate alternatives to sealing and

(iii) the district court must provide specific reasons and factual findings to the effect that the circumstances of the case warrant overriding the public's presumptive right of access to the documents sought to be sealed.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 288 (4th Cir.2000); *see also In re Knight Pub. Co.*, 743 F.2d 231, 235–36 (4th Cir.1984).

■ Nor is the public's presumptive right to access easily overridden; sealing of court records is not warranted absent the presence of a factor sufficient to outweigh the strong interest in public access, such as national security considerations, trade secrets, personal privacy interests, and personal safety concerns. And significantly, the presumption in favor of public access to court filings is especially strong where, as here, the filings involve matters of particular concern to the public, such as allegations of fraud against the government. *See Under Seal v. Under Seal*, 1994 U.S.App. 16117 at \*6 (4th Cir. June 27, 1994) (citing *Smith v. United States District Court for Southern Dist.* 956 F.2d 647, 650 (7th Cir.1992)).

■ Measured by this standard, Permison's arguments for resealing his *qui tam* complaint fall far short of what is required for sealing. While Permison's fear of retaliation is not entirely implausible, it is certainly vague and hypothetical at best; he merely expresses a general apprehension that his former employer might somehow interfere with his career prospects. To be sure, where a whistleblower sets forth potentially damaging allegations about a company in the industry where he continues to work, such fear is not implausible even where, as here, the whistleblower was discharged prior to the disclosure of his whistleblowing activity. Yet, such an amorphous retaliation concern will not suffice to warrant resealing the complaint. Indeed, to conclude otherwise would ignore that Permison's amorphous concern is no different from the concern any employee may have when she sues her employer for whatever reason. Moreover, Permison is not wholly without legal protection. While it is unclear on this record whether Permison might claim protection under the False Claims Act, 31 U.S.C. § 3730(h), given that it appears he was discharged prior to Supertech's awareness of his whistleblowing activities,[2] the law provides other possible remedies, including tortious interference with contract or business relations, and defamation, in the event Supertech were to attempt to poison the industry waters for Permison.

In sum, Permison's vague concern of future retaliation by his former employer falls far short of outweighing the public's strong interest in having access to court filings, especially where the law provides some protection or remedies for such retaliation. It is pellucidly clear, therefore, that resealing the *qui tam* complaint on this ground is unwarranted.

■ The second ground for resealing—the risk of harm to Supertech's reputation—is easily disposed of given the Fourth Circuit's clear statement that "simply showing that the sealed information would harm a company's reputation is not

---

**2.** No published decision has been found addressing whether a whistleblower may avail herself of § 3730(h) where she was discharged prior to the disclosure of her whistleblowing activity to her employer and for reasons unrelated to the whistleblowing. Of course, if Permison is able to show a link between his discharge and his filing of the *qui tam* complaint, then he can claim the protection of § 3730(h). In that event, it is difficult to see any reason for a continued concern relating to retaliation because the retaliation has already occurred, and thus there is no persuasive reason for resealing the complaint. *See Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 866 (4th Cir.1999).

sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Under Seal,* 1994 U.S.App. 16117 at *9 (quoting *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1179 (6th Cir.1983)).

Finally, Permison requests in the alternative, and for the same reasons, that references to him in the complaint be redacted. Such redaction would still constitute a limitation of public access to information about court proceedings, albeit a less substantial one than sealing of the entire *qui tam* complaint. Thus Permison must still demonstrate a countervailing interest that outweighs the public interest in access, which, in the end, he cannot do. If the principal ground for redaction is fear of retaliation by his former employer, it is doubtful that redaction would provide any protection given the very specific allegations contained in the complaint. Permison would likely be identified as the relator, even in the absence of specific references to him in the complaint, as he first raised the very issues on which his claims are based with his superiors at Supertech. Indeed, effectively, concealing Permison's identity as the relator would presumably require redaction of nearly the entire complaint; in other words, it would essentially require the resealing of the complaint, which, as stated above, is unwarranted. Because Permison does not demonstrate an interest that outweighs the public's strong interest in access to court documents, the request for redaction must be denied.

Accordingly, for the above-stated reasons, for the reasons stated from the Bench, and for good cause,

It is hereby **ORDERED** that plaintiff's motion to reseal the complaint and motion in the alternative to redact references to plaintiff from the file is **DENIED.**

The Clerk is directed to send a copy of this Order to all counsel of record and to place this matter among the ended causes.