UNITED STATES of America and The State of Michigan ex rel Anne Herrera, RN, and Anne Herrera, individually, Plaintiffs,

v.

BON SECOURS COTTAGE HEALTH SERVICES, d/b/a Bon Secours Cottage Home Care, Defendant.

Case No. 07–12239.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 16, 2008.

Michael J. Riordan, United States Attorney's Office, Detroit, MI, Mercedes V. Dordeski, Frank, Haron, Monica P. Navarro, Frank, Stefani, Troy, MI, for Plaintiffs.

## OPINION

PATRICK J. DUGGAN, District Judge.

Plaintiff–Relator initiated this *qui tam* action under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and under Michigan's Medicaid False Claims Act, MICH. COMP. LAWS § 400.610a, against her former employer, Bon Secours Cottage Health Services ("Defendant"), alleging that Defendant fraudulently submitted inflated and inaccurate bills to Medicare and Medicaid for payment. Presently before the Court is Plaintiff–Relator's Emergency Motion for Maintenance of Seal and for Voluntary Dismissal Without Prejudice. The Court held a hearing on Plaintiff–Relator's motion on September 4, 2008.

## I. Factual and Procedural Background

Plaintiff–Relator is "currently working in the health industry as a Registered Nurse and supports herself and her daughter through her employment." (Pl.'s Br. at 6.[1]) She was formerly employed with Defendant, which is now owned by Beaumont Health Systems, as a home nursing care provider from 2001 to 2007. Plaintiff–Relator alleges that "[s]he was constructively discharged in 2007 and then

---

1. The pages of Plaintiff's brief in support of her motion are not paginated.

falsely accused [ ] by the Defendant of committing health care fraud." (*Id.* at 1.) In early 2006, Plaintiff–Relator learned that Defendant was being investigated with regard to its allegedly improper recording of time to inflate Medicare and Medicaid payments. Plaintiff–Relator claims that Defendant then accused her and other nurses of falsifying their billable records. Plaintiff–Relator "was directed to write a letter of 'explanation' for the alleged 'wrongdoing.'" (*Id.* at 2.) After learning that another one of Defendant's nurses was terminated based on allegations of falsifying billing records, Plaintiff "opted" to "resign" from her employment. Defendant then initiated an administrative action against Plaintiff–Relator. Plaintiff–Relator was later cleared of any wrongdoing.

On May 23, 2007, Plaintiff–Relator initiated this action, in the name of the federal government ("Government") and the State of Michigan, by filing her complaint under seal pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3730(b)(2), and Michigan's Medicaid False Claims Act, MICH. COMP. LAWS § 400.610a(2). After being served with the complaint, the Government and the State of Michigan began investigating Plaintiff–Relator's claims to determine whether they would intervene. Generally, a complaint filed pursuant to the False Claims Act remains under seal for at least 60 days after it is filed, allowing the Government to conduct an investigation. 31 U.S.C. § 3730(b)(2). Furthermore, a *qui tam* complaint cannot be served upon the defendant absent a court order.[2] *Id.* Should the Government wish to intervene it may do so within 60 days after "it receives both the complaint and the material evidence and information." *Id.*

Here, the Government, on July 27, 2007, filed a stipulation, and the Court entered

an order pursuant to the same, extending the time to intervene and continuing the seal until January 30, 2008. In October 2007, again pursuant to a stipulation by the parties, the Court entered an order partially lifting the seal, allowing the Government to disclose a redacted complaint to Defendant. Then, on February 1, 2008, the Court entered another order, again pursuant to a stipulation, continuing the seal and extending the time to intervene until July 31, 2008.

The Government and the State of Michigan thereafter declined to intervene, prompting Plaintiff–Relator to file the instant motion requesting an order voluntarily dismissing the complaint and permanently sealing this matter on July 30, 2008. The Government filed its response on August 7, 2008, in which it agrees with Plaintiff–Relator's request for an order of voluntary dismissal but objects to Plaintiff–Relator's request for a permanent seal. The State of Michigan has not responded to Plaintiff–Relator's motion.

## II. Discussion

 The relief requested in Plaintiff–Relator's motion is two-fold. First, Plaintiff–Relator requests that the Court dismiss her *qui tam* complaint without prejudice. As indicated, neither the Government nor the State of Michigan objects to Plaintiff–Relator's request for a voluntary dismissal. Therefore, the Court will grant Plaintiff–Relator's request for a voluntary dismissal of her *qui tam* complaint. Second, Plaintiff–Relator requests that the Court maintain the seal in this action. The instant dispute between Plaintiff–Relator and the Government stems from Plaintiff–Relator's request for maintenance of the seal.

**2.** The Michigan Medicaid False Claims Act is substantially similar to the FCA. *Compare* 31 U.S.C. § 3730 *with* MICH. COMP. LAWS § 400.610a.

In arguing that the entire record should remain sealed, Plaintiff–Relator contends that "[s]he has already been improperly targeted and blamed by [D]efendant for only doing her job as instructed and then forced to resign under fear of termination." (Pl.'s Br. at 5.) Plaintiff–Relator further maintains that she "is still actively employed in the health care community and substantially fears for her economic, at a minimum, safety if she is exposed as a 'whistle-blower.'" (*Id.*) Consequently, Plaintiff–Relator asserts that unsealing any of the documents in this case would harm her reputation and career in the health care community and would discourage whistle blowers, like herself, from acting as "private attorneys-general" in exposing fraud against the Government.

The Government argues that the complaint, order of dismissal, and the order dispensing with Plaintiff–Relator's instant motion should be unsealed. The Government first asserts that the FCA does not support Plaintiff–Relator's request for a permanent seal. Rather, according to the Government, the initial sealing of *qui tam* complaints under the FCA is intended to protect only the Government's investigative files and sources when the Government is determining whether to intervene in a *qui tam* action. This alleged need to protect the Government's investigative and deliberative process, argues the Government, "does not apply to the filing of a *qui tam* complaint in which the United States plays no role." (Govt.'s Resp. Br. at 3.) The Government further avers that "[i]n exchange for the right to receive a substantial share of any recovery, relators accept the fact that their suit—even if unsuccessful—will be publicly disclosed." (*Id.* at 3–4.) Finally, the Government contends that Plaintiff–Relator is unable to make the showing necessary to overcome the strong presumption of public access to judicial files. Under the present circumstances, the Court finds the Government's arguments more persuasive.

In determining whether the seal should be maintained the Court first turns to the text and purposes of the relevant provisions of the FCA. Congress amended the FCA "in 1986 to encourage private enforcement suits." *United States ex rel. Dimitri Yannacopolous v. Gen. Dynamics,* 457 F.Supp.2d 854, 857 (N.D.Ill.2006) (citations omitted). The FCA permits private persons, known as relators, to bring a suit in the name of the United States for, among other prohibited acts, knowingly presenting false or fraudulent claims for payment or approval to an officer or employee of the government. 31 U.S.C. § 3729(a)(1). Because suits under the FCA are brought in the name of the Government, a relator is required to serve the Government with "[a] copy of the complaint and a written disclosure of substantially all material evidence and information" possessed by the relator. *Id.* § 3730(b)(2). After being served, the Government then has 60 days to intervene and proceed as the primary party responsible for prosecuting the case. *Id.* § 3730(b)(2), (c). The Government may, for good cause shown, seek an extension of the 60–day period. *Id.* § 3730(b)(3). During the 60–day period and any extension of that period, the complaint remains under seal. *Id.* § 3730(b)(2).

While the FCA clearly encourages private enforcement suits, there is nothing in the FCA evincing a congressional intent to impose a permanent seal over all *qui tam* suits where a relator seeks to voluntarily dismiss the action after the Government declines to intervene. Rather, the text of the FCA provides that the complaint will remain sealed for at least 60 days while the Government conducts its investigation to determine whether it will intervene. *See* 31 U.S.C. § 3730(b)(2). In this Court's opinion, the imposition of a 60–day

time period for sealing *qui tam* complaints reflects Congress' desire to have the seal lifted after the Government conducts its initial investigation and decides whether to intervene. *See United States ex rel. Erickson v. Univ. of Wash.,* 339 F.Supp.2d 1124, 1126 (W.D.Wa.2004)("The FCA clearly contemplates the lifting of the seal on the relator's complaint.")(citing 31 U.S.C. § 3730(b)(3), which states that "[t]he defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant. . . .") Furthermore, the FCA only allows the Government to seek an extension of the 60–day time period for maintaining the seal, *id.* 3730(b)(3), which, in this Court's opinion, suggests that the seal was intended to allow the Government an opportunity to adequately investigate the defendant's alleged fraud, not to protect the identity of relators. Whistle blowers, like Plaintiff–Relator, are given financial incentives to initiate *qui tam* actions under the FCA. Should the Government prevail in a *qui tam* action in which it intervenes, a relator is entitled to 15–25% of the recovery. On the other hand, should the relator prevail on her own behalf when the Government declines to intervene, the relator is entitled to 25–30% of the recovery. Thus, there is an even greater financial incentive for relator's to proceed in the absence of government intervention, and relators proceeding without government intervention could not do so anonymously, as it would be necessary for a court under such circumstances to order that the seal be lifted to allow such relators to serve the complaint on the defendant. *See id.* (stating that the defendant need not respond to a *qui tam* complaint "until 20 days after the complaint is unsealed").

Because there is nothing in the FCA suggesting that the initial seal was imposed to protect the identity of the relator or that *qui tam* complaints in which the Government decides not to intervene should be permanently sealed, Plaintiff–Relator's request for a permanent seal must overcome the strong presumption in favor of access to judicial records.

■ It is well-settled that there is a strong presumption in favor of public access to judicial records. *See, e.g., Nixon v. Warner Comms.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). While public access to judicial records is not absolute, the strong presumption in favor of public access is not easily overcome. *Jessup v. Luther,* 277 F.3d 926, 928 (7th Cir.2002). As one district court has stated: "sealing of court records is not warranted absent the presence of a factor sufficient to outweigh the strong interest in public access, such as national security considerations, trade secrets, personal privacy interests, and personal safety concerns." *United States ex rel. Jack Permison v. Superlative Techs.,* 492 F.Supp.2d 561, 564 (E.D.Va.2007). Significantly, "the presumption in favor of public access to court filings is especially strong where, as here, the filings involve matters of particular concern to the public, such as allegations of fraud against the government." *Id.* (citing *Under Seal v. Under Seal,* No. 94–1171, 1994 WL 283977, at *2, 1994 U.S.App. LEXIS 16117, at *6 (4th Cir. June 27, 1994)).

Here, Plaintiff–Relator asserts that her reputation and career would be put in jeopardy should the complaint, any order of dismissal, and any order disposing of the present motion be unsealed. While Plaintiff–Relator's fear of employment-related retaliation is not completely unfounded given her alleged constructive discharge by Defendant [3] in 2007, the Court does not

---

**3.** As indicated above, Defendant is no longer in existence.

believe that Plaintiff–Relator's fear of retaliation by her current employer or future employers is sufficient to overcome the strong presumption in favor of access to judicial records. "Indeed, to conclude otherwise would ignore that [Plaintiff–Relator's] amorphous concern is no different from the concern any employee may have when she sues her employer for whatever reason." *Id.* Furthermore, should Plaintiff–Relator be retaliated against by her current employer or future employers for filing this *qui tam* action, she is not without legal recourse. The FCA specifically provides a cause of action for employees retaliated against for filing *qui tam* actions. *See* 31 U.S.C. § 3730(h); *see also Superlative Techs.*, 492 F.Supp.2d at 564.

Alternatively, Plaintiff–Relator "requests that the entire case file and pleadings be unsealed and that [her] name and other identifying information be redacted from all the documents." (Pl.'s Rep. Br. at 5.) In this Court's view, Plaintiff–Relator's request for a wholesale redaction of all identifying information is tantamount to maintaining a permanent seal over all of the documents filed in this action. Therefore, because there is nothing in the FCA that supports Plaintiff–Relator's request for a permanent seal of a *qui tam* complaint and because Plaintiff–Relator has failed to demonstrate that the strong presumption in favor of public access to judicial records must give way to her concerns, Plaintiff–Relator's alternative argument must also fail. Moreover, even if Plaintiff–Relator's name and other identifying information were redacted from the complaint, Defendant may still be able to deduce Plaintiff–Relator's identity from other the factual allegations in her complaint. *See Superlative Techs.*, 492 F.Supp.2d at 565 (rejecting a similar alternative argument).

Finally, in a supplemental brief, Plaintiff–Relator argues that a "recent pertinent case" decided by the Second Circuit supports her argument that the seal should be maintained. In *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir.2008), the Second Circuit held that the district court erred when it dismissed a complaint alleging claims for physical and sexual assault in violation of federal and state law, in which the *pro se* plaintiff sought to proceed under a pseudonym. The Second Circuit in *Sealed Plaintiff* adopted the Ninth Circuit's approach to dealing with requests to proceed under a pseudonym and held that "the interests of both the public and the opposing party should be considered when determining whether to grant an application to proceed under a pseudonym." *Id.* at 189. Notwithstanding the fact that *Sealed Plaintiff* is distinguishable from this case because it did not involve a *qui tam* action, the Court believes, as it has already indicated above, that Plaintiff–Relator's personal privacy interests in maintaining the seal, i.e., her general apprehension regarding retaliation by her current employer or future employers, are insufficient to overcome the strong presumption in favor of access to public records. Consequently, the Court concludes that Plaintiff–Relator's reliance on *Sealed Plaintiff* is unpersuasive.

## III. Conclusion

This Court concludes that Plaintiff–Relator has failed to demonstrate that the FCA authorizes the maintenance of a permanent seal with regard to *qui tam* complaints in which the Government decides not to intervene. The Court also finds that Plaintiff–Relator's general fear of relation by her current employer or future employers is insufficient to overcome the strong presumption in favor of access to judicial records.

An Order consistent with this Opinion shall issue.

Plaintiff–Relator initiated this *qui tam* action under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and under Michigan's Medicaid False Claims Act, MICH. COMP. LAWS § 400.610a, against her former employer, Bon Secours Cottage Health Services ("Defendant"), alleging that Defendant fraudulently submitted inflated and inaccurate bills to Medicare and Medicaid for payment. Presently before the Court is Plaintiff–Relator's Emergency Motion for Maintenance of Seal and for Voluntary Dismissal Without Prejudice.

For the reasons set forth in an Opinion issued this date,

**IT IS ORDERED** that Plaintiff–Relator's Emergency Motion for Maintenance of Seal and for Voluntary Dismissal Without Prejudice is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff–Relator's complaint is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff–Relator's Complaint and this Order will be **UNSEALED** upon the expiration of the time for seeking appellate review. In the event Plaintiff–Relator seeks appellate review, Plaintiff–Relator may seek a stay of this Order pending a ruling by the Sixth Circuit.