UNITED STATES of America ex rel.
Michael WENZEL, Plaintiff,

v.

PFIZER, INC., Defendant.

Civil No. 10–11702–NMG.

United States District Court,
D. Massachusetts.

July 25, 2012.

218

Howard M. Brown, Bartlett Hackett Feinberg P.C., Zachary A. Cunha, United States Attorney's Office, Boston, MA, Catherine Truman, Helena, MT, for Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

*Qui tam* plaintiff/relator Michael Wenzel brought this action on behalf of the United States and 23 state governments pursuant to the federal False Claims Act and several state law equivalents. The United States and all 23 state governments determined not to intervene, at which point the relator moved voluntarily to dismiss the Complaint and to maintain the seal over all pleadings filed in this action. The motion to dismiss is unopposed and will be allowed. Conversely, the motion to seal is opposed and warrants further discussion.

## I.  *Background*

### A.  The Parties

Wenzel, the *qui tam* plaintiff/relator, is a resident of New Jersey and was employed by Pfizer as a sales representative from 1998 to April 2011.  Beginning in December 2005, and during the time of Pfizer's alleged misconduct, Wenzel was a sales representative in Jersey City responsible for the sale of Zyvox®, a drug manufactured by Pfizer.  Since September 2011, Wenzel has worked as a sales representative for Align Technologies, a medical equipment company.

Defendant, Pfizer Inc. ("Pfizer") is a Delaware corporation with its principal place of business in New York City. Pfizer is principally engaged in the manufacture and sale of pharmaceuticals, which it sells throughout the United States including Massachusetts.  Pfizer's sales of Zyvox® are handled by the Institutional Sales Division.

### B.  The Applicable Law

### 1.  The FDA Regulatory Scheme

FDA regulations strictly prohibit a pharmaceutical company from promoting an "off-label" use of its products, i.e., a use not stated on the drug's FDA-approved label for intended use.  21 U.S.C. §§ 331, 352.  In addition to prohibiting manufacturers from directly marketing and promoting a product's off-label uses, Congress and the FDA have sought to prevent them from employing indirect methods to accomplish the same end through regulation of two of the most prevalent indirect promotional strategies: 1) manufacturer dissemination of medical and scientific publications concerning off-label uses of their products and 2) manufacturer support for Continuing Medical Education ("CME") programs which focus on off-label uses.

### 2.  The Federal False Claims Act

The federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.,* provides that any person who presents or causes to be presented false or fraudulent claims for payment or approval by the federal government, or knowingly makes, uses or causes to be made or used false records and statements to induce it to pay or approve false and fraudulent claims, is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages incurred by the federal government.  When a *qui tam* action is filed on behalf of the United States, the complaint is filed "in camera" and remains under seal for at least 60 days while the government investigates and determines whether it will intervene.  31 U.S.C. § 3730(b)(2)-(4).

### 3.  State Law Violations

Wenzel also brings charges under 23 state law equivalents of the FCA.

### C.  The Relevant Facts

### 1.  Pfizer's 2009 Settlement and the Corporate Integrity Agreement

In September 2009, Pfizer entered into a record $2.3 billion settlement agreement with the Department of Justice ("DOJ") to resolve civil and criminal charges arising from Pfizer's unlawful promotion of several of its drugs ("the Settlement Agreement"). The settled claims included a claim arising from allegations that Pfizer made unauthorized statements about the safety and efficacy of Zyvox®.  The Zyvox® component of the Settlement Agreement required Pfizer to pay more than $98 million for Pfizer's illegal promotion of Zyvox® from 2001 to 2008.  Wenzel alleges that Pfizer continued make "off-label claims," i.e., claims related to uses of Zyvox® that do not appear on its FDA-approved label, in promoting the drug after 2008.

In addition to the monetary payment, the Settlement Agreement required Pfizer to enter into a Corporate Integrity Agreement ("the Corporate Agreement") with the Office of Inspector General of the Department of Health and Human Services to ensure Pfizer's future compliance. With respect to speaker programs in particular, the Corporate Agreement mandates that 1) a Pfizer employee must attend each company-sponsored speaker event and certify afterward that it complied with FDA requirements, 2) Pfizer's paid speakers must use a pre-approved slide deck and 3) if a speaker makes off-label claims, the Pfizer employee-in-attendance must stop the presentation, inform the audience that the speaker is making off-label claims and report the incident to his supervisor for further investigation.

### 2. Pfizer's Alleged Misconduct

Wenzel alleges that Pfizer management willfully ignored and refused to enforce the requirements of the Corporate Agreement and FDA regulations in its advertisement of Zyvox® in 2010. Specifically, Wenzel claims that Dr. Marin Kollef made off-label claims about Zyvox® as a CME speaker on behalf of Pfizer throughout 2010.

Dr. Kollef makes more presentations on behalf of Pfizer than any other speaker. Wenzel estimates that Dr. Kollef gave 200 talks for Pfizer in 2009 and 2010, for which he was paid more than $200,000. Wenzel alleges that before one such presentation in May 2010, he was informed by Pfizer sales representative, Vincent Greco that Dr. Kollef's program violated the Corporate Agreement and FDA regulations. Specifically, Dr. Kollef purportedly 1) refused to allow Greco to review his slide deck, 2) presented his own slide deck instead of Pfizer's pre-approved slide deck, 3) was not interrupted by the Pfizer district manager in attendance when he began making off-label claims and 4) stated in conversation after the presentation that he regularly refuses to use Pfizer's slides when giving Zyvox® presentations and that Pfizer was aware of the nature of his presentations but never raised any concern.

Following his discussion with Greco, Wenzel phoned his district manager and repeated what he had been told. The district manager allegedly stated that he was already aware of the situation and instructed Wenzel to allow the May 19 event to proceed as planned but not to attend.

## II. *Procedural History*

On October 5, 2010, Wenzel filed a complaint against Pfizer on behalf of the United States as well as 23 individual states. Wenzel sought to recover damages and civil penalties arising from the false and fraudulent statements, records and claims made by Pfizer and its agents, employees and alleged co-conspirators in violation of 31 U.S.C. §§ 3729–33. Pursuant to the requirements of the FCA, the Complaint was filed under seal without service on the defendant in order to enable the government to investigate the allegations without the defendant's knowledge and determine whether to intervene. The seal was extended on three occasions and the action currently remains under seal.

After receiving notice of the suit, the United States and 23 States declined to intervene, whereupon Wenzel moved to dismiss the case but to maintain the pleadings under seal. The United States consented to the motion to dismiss but opposed the motion to seal except with respect to information pertaining to the government's investigative practices.

## III. *Motion to Seal*

### A. Standard

█ Section 3730 of Title 31 of the United States Code provides that *qui tam* com-

plaints are to be filed *in camera* and "shall remain under seal for at least 60 days." 31 U.S.C. § 3730. In the opinion of this and other courts,

> the imposition of a 60–day time period for sealing *qui tam* complaints reflects Congress' desire to have the seal lifted after the Government conducts its initial investigation and decides whether to intervene.

*United States ex rel. Herrera v. Bon Secours Cottage Health Servs.,* 665 F.Supp.2d 782, 784–85 (E.D.Mich.2008); *see also United States ex rel. Health Outcomes Techs. v. Hallmark Health Sys., Inc.,* 349 F.Supp.2d 170, 173 (D.Mass.2004) ("[T]he statute clearly contemplates that the complaint be unsealed once the government has acted with respect to intervention.").

■ The general rule in favor of unsealing is subject to the privacy rights of participants and third parties. For example, if particularized evidence demonstrates that the unsealing of a *qui tam* complaint would threaten a litigant's personal privacy or safety, courts have the discretion to maintain a complaint under seal, *see United States ex rel. Permison v. Superlative Techs., Inc.,* 492 F.Supp.2d 561, 564 (E.D.Va.2007), and to unseal a complaint with redactions, *e.g., United States ex rel. [Under Seal] v. St. Jude Med., Inc.,* Case No. 1:10–cv–10849–DJC (D.Mass. Oct. 18, 2011). Most courts have nonetheless decided that a relator's general fear of retaliation is insufficient to rebut the presumption of public access. *See United States v. King Pharm.,* 806 F.Supp.2d 833, 841 (D.Md.2011) (holding that relator's "hypothetical concerns about possible retaliation by her employer and damage to her career prospects" were insufficient to overcome the presumption in favor of public access); *Bon Secours,* 665 F.Supp.2d at 785; *Permison,* 492 F.Supp.2d at 564 (unsealing complaint because relator's fear of retaliation, although

"not entirely implausible," was not supported by specific facts).

Retaliation concerns in the FCA context are mitigated by the statute's retaliatory relief clause, codified at 31 U.S.C. § 3730(h). If an employer retaliates against an employee for filing a *qui tam* claim, § 3730(h) affords a cause of action for reinstatement to the employee's pre-discrimination position and mandates double the damages incurred consequent to discrimination. A relator is thus protected from retaliation even when his allegations are made public through the unsealing of his complaint. *See Bon Secours,* 665 F.Supp.2d at 786.

### B. Application
#### 1. Whether the Presumption of Public Access Applies

■ Wenzel claims that the presumption in favor of public access does not apply to the record in this case because it was dismissed before the Court made any determination as to the litigants' substantive rights. He submits that the presumption in favor of public access applies only to documents that actually form the basis for a judicial ruling on substantive issues, citing for that proposition *Federal Trade Commission v. Standard Financial Management Corp.,* 830 F.2d 404, 412 (1st Cir. 1987).

Wenzel's argument mischaracterizes First Circuit precedent. In *Standard Financial,* the First Circuit ruled that the presumption in favor of public access applies to all documents submitted to a court at the moment they come to the attention of a district judge. 830 F.2d at 409. Hindsight consideration of whether the documents were actually perused by the judge is irrelevant. *Id.* The First Circuit articulated the rule without restriction to the circumstances that prompted its conclusion and, thus, it is binding here not-

withstanding the fact that the instant Complaint will be dismissed before any judicial consideration of Wenzel's substantive rights.

## 2. Balancing Privacy Interests with the Presumption in Favor of Public Access

■ Wenzel claims that good cause exists for maintaining the seal over the pleadings in this case because it would protect him and his wife, who is also a sales representative in the healthcare industry, from retaliation by members of the industry. Wenzel, who is no longer employed by Pfizer and currently works as a sales representative for a medical device manufacturer, alleges that the healthcare industry closely monitors "whistleblower" cases and that he will be subject to industry-wide attacks on his credibility to deter future whistleblowers from filing similar lawsuits. He further contends that because the success of a sales representative is largely predicated on his perceived trustworthiness, his value to his employer would be diminished and he could be fired. Wenzel submits that if he were terminated, he would effectively be blacklisted from the industry for his involvement in a dismissed *qui tam* lawsuit. Wenzel is also concerned that his wife could be stigmatized and ostracized at her job in retaliation against him.

While retaliation by the healthcare industry against Wenzel is plausible, he has failed to provide facts establishing the likelihood of specific retaliatory actions. Wenzel does not substantiate his claim that the healthcare industry closely tracks cases involving whistleblowers and, while that is plausible, similar behavior is equally plausible in every other industry. Furthermore, Wenzel's predictions about his stigmatization are conjectural. He provides no evidence of any specific threat of retaliation by any particular individual or company. Wenzel has thus failed to raise privacy concerns that are sufficiently compelling to override the presumption in favor of public access.

## 3. Unsealing the Record with Redactions

■ Wenzel requests that if the Court decides to unseal the record, it redact any identifying information. In support of his position, he cites a recent Order of United States District Judge Denise Casper of the District of Massachusetts in *Sealed Plaintiff et al. v. St. Jude Med., Inc.*, Case No. 1:10–cv–10849–DJC (D.Mass. Oct. 18, 2011), in which Judge Casper, without elaboration, unsealed the court record with some redactions in order to protect the relator's identity. He does not address the many cases in which courts have declined similar redaction requests. *E.g.*, *Permison*, 492 F.Supp.2d at 565.

After weighing the relevant considerations, this Court is convinced that redaction in the manner requested by Wenzel is inappropriate for several reasons. First, given the level of specificity in the Complaint, redactions that would sufficiently preserve Wenzel's anonymity would effectively seal substantial portions of the Complaint. Because Wenzel raised his concerns with his superiors at Pfizer, redaction to the extent necessary to protect his anonymity would necessitate concealing the time and place of Pfizer's alleged offense and the nature of the specific offense as it pertained to Dr. Kollef. *See id.* (denying relator's request for redactions on that basis). Not only would such extensive redactions be contrary to the presumption in favor of public access, they would also enable future FCA suits against Pfizer for similar conduct that would otherwise be prevented under the FCA's public disclosure bar.

Wenzel filed his claim with the expectation that his identity would be revealed to the public in the event that the govern-

ment entered the case. 31 U.S.C. § 3730 (providing for the unsealing of the Complaint upon the government's intervention). Wenzel was willing to disclose his identity to the public when he stood to gain financially; it is only now that his claim is being dismissed that he seeks anonymity. Wenzel took a calculated risk and this Court will not shield him from the consequences.

### ORDER

In light of the foregoing, the plaintiff/relator's motion to dismiss and maintain seal (Docket No. 17) is **ALLOWED,** in part, and **DENIED,** in part, as follows:

1) the Complaint (Docket No. 1) is hereby dismissed; and

2) the seal on all pleadings filed in this action on or after January 18, 2012, is discharged.

**So ordered.**