WHISTLEBLOWER 14106–10W, PETITIONER *v*. COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 14106–10W.        Filed December 8, 2011.

P, a former senior executive of X, filed a claim for a whistle-
blower award under sec. 7623(b), I.R.C., alleging that X had
underpaid its taxes. R investigated P's claim but did not open
an administrative or judicial proceeding against X and did not
collect any additional tax from X on the basis of P's informa-
tion. R denied P's claim on the basis that an award deter-
mination could not be made under sec. 7623(b), I.R.C. P's
identity thus far has been kept confidential. Asserting that
disclosing P's identity in this judicial proceeding would result

in retaliation and professional ostracism, P filed a motion for a protective order, requesting that the record be sealed or alternatively that P be granted anonymity. While P's motion for a protective order was pending, R filed a motion for summary judgment. P opposes R's motion on the grounds that it is premature because P's motion for a protective order is pending and discovery has not commenced. *Held*: Summary judgment may properly be rendered even though a motion for a protective order is pending and discovery has not commenced. *Held*, *further*, because P failed to meet the threshold requirements for a whistleblower award, R's motion for summary judgment will be granted. *Held*, *further*, because the potential harm from disclosing P's identity as a confidential informant outweighs the public interest in knowing P's identity in this case decided on summary judgment, P's request for anonymity will be granted. *Held*, *further*, the parties will be ordered to redact from the record both P's and X's names and any identifying information about P and X. *Held*, *further*, because granting P's request for anonymity and redacting identifying information adequately protect P's legitimate privacy interests as a confidential informant, P's request to seal the record will be denied.

_____, [1] for petitioner.
*David A. Ingold* and *Ruth Mary Spadaro*, for respondent.

### OPINION

THORNTON, *Judge*: This is an action pursuant to section 7623(b)(4) to review respondent's denial of petitioner's claim for a whistleblower award. [2] This matter is before the Court on respondent's motion for summary judgment and petitioner's motion to seal the record and proceed anonymously.

## *Background*

### *Petitioner's Whistleblower Claim*

On March 3, 2008, petitioner submitted to the Internal Revenue Service Whistleblower Office (Whistleblower Office) Form 211, Application for Award for Original Information. This submission indicated that while employed as a senior executive in a particular company (X), petitioner had become aware of a tax code violation that resulted in X's under-

---

[1] The name of petitioner's counsel has been omitted in furtherance of protecting petitioner's identity.

[2] Unless otherwise noted, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

paying its Federal income tax by a substantial amount. By letter dated March 11, 2008, respondent acknowledged receipt of petitioner's claim.

After various written communications between the parties, by letter to petitioner dated March 13, 2010, the Whistleblower Office advised that petitioner did not qualify for an award because the submitted information did not identify a Federal tax issue upon which the Internal Revenue Service (IRS) would take action and therefore did not lead to the detection of an underpayment of tax for which an award could be made under section 7623(b). Petitioner timely petitioned this Court pursuant to section 7623(b)(4).

*Petitioner's Motion for a Protective Order*

Petitioner also filed, along with the petition, a motion to seal identity, case, and accompanying documents (sometimes referred to hereinafter as petitioner's motion for a protective order). The Court temporarily sealed the record and, after receiving respondent's response and petitioner's supplements to the motion, held a hearing on petitioner's motion. At the hearing petitioner's counsel clarified that petitioner sought to have the record sealed or, alternatively, sought permission to proceed anonymously. Petitioner submitted an affidavit alleging the basis in support of the motion to seal or proceed anonymously. [3]

According to the affidavit, while employed at X, petitioner became aware of the alleged tax underpayment referenced in petitioner's application for a whistleblower award. Petitioner submitted the whistleblower claim to the IRS. Petitioner's identity as a whistleblower has been kept confidential throughout the administrative proceedings and thus far in this judicial action.

At some point after filing the whistleblower claim, petitioner obtained new employment in a company other than X. According to the affidavit petitioner fears "economic and professional ostracism, harm, and job-related harassment if my identity is revealed because my new employer and other potential employers will not want to hire or employ a known tax whistleblower." Petitioner also asserts that X may suffer financially if the details of petitioner's claim are made public.

---

[3] Without objection, petitioner's affidavit was received into evidence as petitioner's testimony.

*Respondent's Motion for Summary Judgment*

On June 6, 2011, while petitioner's motion for a protective order was still pending, respondent filed a motion for summary judgment. On July 6, 2011, petitioner filed an opposition to the granting of respondent's motion for summary judgment. Neither party has requested a hearing on respondent's motion for summary judgment, and we conclude that none is necessary.

## *Discussion*

### I. *Background: Judicial Review of Tax Whistleblower Claims*

Since 1867 the Secretary has had legal authority to make discretionary payments for information that aids in detecting tax underpayments and fraud. See History of the Whistleblower/Informant Program, http://www.irs.gov/compliance/article/0,,id=181294,00.html. In 2006 Congress substantially amended the whistleblower program by enacting section 7623(b).[4] Under this provision, "If the Secretary proceeds with any administrative or judicial action" on the basis of information provided by a whistleblower, then, subject to various conditions, the whistleblower shall be entitled to an award of 15 to 30 percent of the collected proceeds.[5] Sec. 7623(b); see also *Cooper v. Commissioner*, 135 T.C. 70, 73 (2010).

Before 2006 there was no express statutory provision for judicial review of tax whistleblower claims. See *Colman v. United States*, 96 Fed. Cl. 633, 638 (2011) (stating that the pre-2006 tax whistleblower law "cannot serve as the substantive law on which to predicate" jurisdiction of the Court of Federal Claims).[6] This situation changed with the enactment of section 7623(b)(4), which provides that the Tax Court

---

[4] The pre-2006 version of the tax whistleblower law, former sec. 7623, survives with minor changes as sec. 7623(a).

[5] To qualify for an award under sec. 7623(b), the tax, penalties, interest, additions to tax, and additional amounts in dispute must exceed $2 million. Sec. 7623(b)(5)(B). Additionally, if the subject of the whistleblower claim is an individual, the subject's gross income must exceed $200,000 for the year at issue. Sec. 7623(b)(5)(A).

[6] Judicial review of claims arising under the pre-2006 version of sec. 7623 has been confined to contractual claims brought under the Tucker Act, 28 U.S.C. sec. 1491(a)(1) (2000 & Supp. 2005), in limited circumstances where the informant and the IRS had entered into a binding agreement by negotiating and fixing a specific amount for a whistleblower award. See, e.g., *Merrick v. United States*, 846 F.2d 725, 726 (Fed. Cir. 1988); *Colman v. United States*, 96 Fed. Cl. 633, 637–638 (2011).

shall have jurisdiction with respect to any determination regarding an award under section 7623(b)(1), (2), or (3). See *DaCosta v. United States*, 82 Fed. Cl. 549, 553–555 (2008) (holding that claims under section 7623(b) are within the exclusive jurisdiction of the Tax Court). This Court has held that pursuant to section 7623(b)(4) a letter from the Whistleblower Office denying a claim on the grounds that no award determination could be made under section 7623(b) constitutes a determination conferring jurisdiction on this Court. *Cooper v. Commissioner*, *supra* at 73.

## II. *Respondent's Motion for Summary Judgment*

We may grant summary judgment if there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); see *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); *Zaentz v. Commissioner*, 90 T.C. 753, 754 (1988). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. *Dahlstrom v. Commissioner*, 85 T.C. 812, 821 (1985); *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982). When a motion for summary judgment is made and properly supported, the adverse party may not rest upon mere allegations or denials of the pleadings but must set forth specific facts showing that there is a genuine issue for trial. Rule 121(d). If the adverse party does not so respond, then a decision may be entered against such party. *Id.*

Respondent asserts that he is entitled to summary judgment because petitioner does not meet the threshold requirements for an award under section 7623(b). Along with his motion for summary judgment respondent filed the affidavit of Chief Counsel Attorney David A. Ingold, declaring, on the basis of his review of respondent's administrative and legal files and on the basis of conversations with relevant IRS personnel, that the information petitioner provided resulted in respondent's taking no administrative or judicial action against X or collecting from X any amounts of tax, interest, or penalty.

Petitioner's opposition does not address the substantive merits of respondent's motion for summary judgment but

suggests that respondent's motion is premature because petitioner's motion for a protective order is still pending and because formal discovery has not yet commenced. We disagree that respondent's motion for summary judgment is premature. Pursuant to Rule 121(a) a party may move for summary judgment "at any time commencing 30 days after the pleadings are closed but within such time as not to delay the trial." And pursuant to Rule 121(b), the Court may grant summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. The pendency of petitioner's motion for a protective order is immaterial to respondent's filing or the Court's ruling upon the motion for summary judgment.

Contrary to Rule 121(d), petitioner's opposition does not set forth, by affidavits or otherwise, any specific facts showing that there is a genuine issue for trial. Nor, pursuant to Rule 121(e), has petitioner otherwise made any showing that the facts set forth in Mr. Ingold's affidavit are genuinely disputed.[7]

Rule 121(e) is modeled in large part after former rule 56(f) of the Federal Rules of Civil Procedure (redesignated rule 56(d) in 2009 with nonsubstantive changes). In *Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386 (Fed. Cir. 1989), applying former rule 56(f), the court held that the plaintiff could not avoid summary judgment by requesting discovery. The court characterized the plaintiff's opposition as saying, in effect: "we have no factual basis for opposing summary judgment, but, if you stay proceedings, we *might* find *something.*" *Id.* at 1389. The court observed: "If all one had to do to obtain a grant of a Rule 56(f) motion were to allege possession by movant of 'certain information' and 'other evidence',

---

[7] Rule 121(e) provides:

When Affidavits Are Unavailable: If it appears from the affidavits of a party opposing the motion [for summary judgment] that such party cannot for reasons stated present by affidavit facts essential to justify such party's opposition, then the Court may deny the motion or may order a continuance to permit affidavits to be obtained or other steps to be taken or may make such other order as is just. If it appears from the affidavits of a party opposing the motion that such party's only legally available method of contravening the facts set forth in the supporting affidavits of the moving party is through cross-examination of such affiants or the testimony of third parties from whom affidavits cannot be secured, then such a showing may be deemed sufficient to establish that the facts set forth in such supporting affidavits are genuinely disputed.

every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's files." *Id.* For similar reasons, summary judgment for respondent is not inappropriate simply because petitioner has not commenced discovery.

On the substantive merits of respondent's motion for summary judgment, *Cooper v. Commissioner*, 136 T.C. 597 (2011), is controlling. In that case, decided after respondent moved for summary judgment in the case before us, this Court held in closely analogous circumstances that the Commissioner was entitled to summary judgment. As this Court stated, under section 7623(b)(1) "a whistleblower award is dependent upon *both* the initiation of an administrative or judicial action *and* collection of tax proceeds." *Id.* at 600. "If the Secretary does not proceed, there can be no whistleblower award." *Id.* at 601. According to the affidavit filed in support of respondent's motion for summary judgment, these preconditions for an award have not been met. Consequently, we shall grant respondent's motion for summary judgment.

## III. *Petitioner's Motion for a Protective Order*

Although we have held that respondent is entitled to summary judgment, we still need to rule on petitioner's motion for a protective order, since our ruling will affect any further proceedings in this case and will govern future public access to information in the record. Petitioner's request to seal the record or alternatively to proceed anonymously presents novel issues of balancing the public's interests in open court proceedings against petitioner's privacy interests as a confidential informant.

### A. *Openness of Court Proceedings*

This country has a long tradition of open trials and public access to court records. This tradition is embedded in the common law, the statutory law, and the U.S. Constitution. See *Nixon v. Warner Commcns., Inc.*, 435 U.S. 589, 597 (1978); *Washington Legal Found. v. U.S. Sentencing Commn.*, 89 F.3d 897, 902 (D.C. Cir. 1996); *Willie Nelson Music Co. v.*

*Commissioner*, 85 T.C. 914, 917 (1985). [8] Open trials and public access to court records promote fairness and the search for truth, help enlighten public opinion, and assure confidence in the judicial process. See *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569–575 (1980); *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 383 (1979). But the right to access judicial records "has never been considered absolute. To the contrary, courts always have asserted the power to seal their records when deemed necessary." *United States v. Mitchell*, 551 F.2d 1252, 1260 (D.C. Cir. 1976), revd. on other grounds sub nom. *Nixon v. Warner Commcns., Inc.*, *supra*.

Consistent with these principles, section 7458 provides that hearings before the Tax Court shall be open to the public. And section 7461(a) provides generally that all reports of the Tax Court and all evidence received by the Tax Court shall be public records open to the inspection of the public. But the Tax Court is authorized to "make any provision which is necessary to prevent the disclosure of trade secrets or other confidential information, including a provision that any document or information be placed under seal to be opened only as directed by the Court." Sec. 7461(b)(1). Under Rule 103(a), upon motion by a party or any other affected person and for good cause shown, the Court may make any order which justice requires to protect a party or other person from annoyance, embarrassment, oppression, or undue burden or expense, including but not limited to an order that a trade secret or other information not be disclosed or be disclosed only in a designated way. Hence, this Court, like other courts, has broad discretionary authority to control and seal, if necessary, records and files in its possession. See *Anonymous v. Commissioner*, 127 T.C. 89, 91 (2006); *Willie Nelson Music Co. v. Commissioner*, *supra* at 920. In addition, where appropriate, this Court may permit

---

[8] The Supreme Court has held that there is a guaranteed right of the public under the First Amendment to attend criminal trials, see *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), but has not expressly ruled on whether there is a First Amendment right of access to civil proceedings and documents. The Courts of Appeals that have addressed the issue agree that there is such a constitutional right. See, e.g., *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124–127 (2d Cir. 2006); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067–1070 (3d Cir. 1984); *In re Contl. Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178–1179 (6th Cir. 1983).

a petitioner to proceed anonymously. *Anonymous v. Commissioner*, *supra* at 91.

Section 7623 does not expressly address privacy interests of tax whistleblowers or other affected persons.[9] When it promulgated Title XXXIII of its Rules of Practice and Procedure, relating to tax whistleblower actions, this Court observed that in appropriate cases it might permit a petitioner to proceed anonymously and might seal the record in that case. Explanatory Note to Rule 340, 130 T.C. 586. The Court stated that it contemplated that

generally applicable statutory provisions, Rule 103, and related caselaw, while they do not require the Court's records * * * to be sealed or require the Court to permit all petitioners in those cases to proceed anonymously, do provide authority for the Court to allow a petitioner to proceed anonymously and to seal the record when appropriate in whistleblower actions. [*Id.*]

B. *Considering the Less Drastic Option First*

Petitioner has requested in the first instance that we seal the record and, alternatively, that we permit petitioner to proceed anonymously. Before granting a request to seal the record, however, it is appropriate to consider the less drastic option of permitting the requesting party to proceed anonymously.[10] *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988); see *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1278 (D.C. Cir. 1991) (stating that if the trial court determines that some type of sealing order is warranted, it should be "no broader than is nec-

---

[9] In 2007 the Senate passed a bill with this provision that would have authorized the Tax Court in new sec. 7623(b)(4)(B) to seal portions of the record in tax whistleblower cases:

PUBLICITY OF APPEALS—Notwithstanding sections 7458 and 7461, the Tax Court may, in order to preserve the anonymity, privacy, or confidentiality of any person under this subsection, provide by rules adopted under section 7453 that portions of filings, hearings, testimony, evidence, and reports in connection with proceedings under this subsection may be closed to the public or inspection by the public. [U.S. Troop Readiness, Veterans' Health, and Iraq Accountability Act, 2007, H.R. 1591, 110th Cong., sec. 543(c) (as passed by Senate, Mar. 29, 2007).]

This provision, which ultimately was not enacted, is substantially identical to sec. 6110(f)(6). See *infra* note 11.

[10] The Judicial Conference of the United States has recently adopted a national policy that encourages Federal courts to seal entire civil case files only when sealing is "required by statute or rule or justified by a showing of extraordinary circumstances and the absence of narrower feasible and effective alternatives such as sealing discrete documents or redacting information, so that sealing an entire case file is a last resort." News Release, Administrative Office of the U.S. Courts, Conference Approves Standards & Procedures for Sealing Civil Cases (Sept. 13, 2011), available at http://www.uscourts.gov/News/NewsView/11–09–13/Conference_Approves_Standards_Procedures_For_Sealing_Civil_Cases.aspx.

essary to protect those specific interests identified as in need of protection"); *In re N.Y. Times Co.*, 585 F. Supp. 2d 83, 91 (D.D.C. 2008) (concluding that protecting an informant's identity did not require sealing of documents but could be accomplished through the redaction of the informant's name). Permitting a litigant to proceed anonymously, unlike sealing the record, preserves in large measure the public's ability to scrutinize judicial functioning since "Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

C. *Petitioner's Request for Anonymity*

1. *General Considerations*

"A party may generally proceed anonymously when the trial court reasonably determines that the need for anonymity outweighs the prejudice to the opposing party and the general presumption that the parties' identities are public information." *Anonymous v. Commissioner*, *supra* at 94. The decision whether to allow a party to proceed anonymously rests within the sound discretion of the trial court. *Id.*; see *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); see also sec. 7461(b)(1).

In rare instances this Court has permitted taxpayers in deficiency cases to proceed anonymously upon finding that the need for anonymity outweighed prejudice to the opposing party and the general presumption that the parties' identities are public information.[11] See *Anonymous v. Commissioner*, *supra* at 94; *Anonymous v. Commissioner*, T.C. Memo. 2010–87. In these deficiency cases the taxpayers demonstrated risks of severe physical harm if their identities were revealed. No court has previously considered the circumstances under which tax whistleblower suits under section 7623(b) may be prosecuted anonymously. Consequently, we shall consider in some detail the various factors that courts have applied in determining whether litigation should proceed anonymously or pseudonymously.

---

[11] Under Rule 227, promulgated pursuant to sec. 6110(f)(3), petitioners and intervenors may also proceed anonymously, if appropriate, in disclosure actions in the Tax Court. See, e.g., *Anonymous v. Commissioner*, 134 T.C. 13 (2010). The records in disclosure actions are generally sealed pursuant to Rule 228, promulgated pursuant to sec. 6110(f)(6).

Seven Courts of Appeals have adopted or endorsed multifactor tests to govern the trial court's exercise of discretion in determining whether litigation should be permitted to proceed anonymously or pseudonymously. See *Lozano v. City of Hazleton*, 620 F.3d 170, 195 (3d Cir. 2010), vacated and remanded on other grounds 563 U.S. ___, 131 S. Ct. 2958 (2011); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190–191 (2d Cir. 2008); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004); *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000); *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998); *James v. Jacobson*, *supra* at 238; *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992); *Doe v. Stegall*, *supra* at 184–186; see also *Anonymous v. Commissioner*, 127 T.C. at 94. [12]

Relatively recently, the Court of Appeals for the Second Circuit canvassed the caselaw to compile what that court described as a "non-exhaustive" list of 10 factors that a trial court should consider in balancing a litigant's interest in anonymity against the public interest in disclosure and any prejudice to the opposing party:

(1) whether the litigation involves matters that are "highly sensitive and [of a] personal nature"; (2) "whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties"; (3) whether identification presents other harms and the likely severity of those harms, including whether "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity"; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district

---

[12] Any appeal of this case would likely lie with the Court of Appeals for the D.C. Circuit. See sec. 7482(b)(1) (flush language). That court, like the Supreme Court, has not expressly addressed the propriety of pseudonymous or anonymous litigation, although on occasion these courts have permitted, without comment, pseudonymous litigation to proceed. See, e.g., *Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Sullivan*, 938 F.2d 1370 (D.C. Cir. 1991); *Doe v. Weinberger*, 820 F.2d 1275 (D.C. Cir. 1987).

In *Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C. 2005), writing for the District Court, Judge Lamberth observed that neither the Court of Appeals for the D.C. Circuit nor the U.S. District Court for the District of Columbia had "tackled the propriety of pseudonymous litigation head on". He indicated that the District Court had developed an "ad-hoc process", whereby the chief judge may grant leave to file a complaint under a pseudonym if the requesting litigant "makes a colorable argument in support of the request" and that this process serves to "get the case moving quickly, leaving the issue open to full, adverse litigation at a later date." *Id.*

court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities"; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff. [*Sealed Plaintiff v. Sealed Defendant*, *supra* at 190; citations omitted. [13]]

As another court has aptly noted, the multiplicity of factors to be considered "suggests the breadth of the discretion to be exercised." *Doe v. Del Rio*, 241 F.R.D. 154, 157 n.4 (S.D.N.Y. 2006).

To a significant degree, these various factors are intermingled and overlapping. For instance, the first three factors listed above address collectively the single most important consideration—"the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases". *Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 506 (M.D. Pa. 2007) (and cases cited thereat), affd. in part and vacated in part on other grounds 620 F.3d 170 (3d Cir. 2010), vacated and remanded 563 U.S. ____, 131 S. Ct. 2958 (2011). That consideration is influenced, in turn, by whether the party seeking protection is particularly vulnerable (factor 4) and whether the party's confidentiality has thus far been maintained (factor 7). And the sufficiency of the basis asserted for anonymity also implicates societal interests (factors 8 and 9) inasmuch as it depends on whether there is a "'strong social interest in concealing the identity of the plaintiff'". *Wolfchild v. United States*, 62 Fed. Cl. 521, 553 (2004) (quoting *Doe v. Rostker*, 89 F.R.D. 158, 162 (N.D. Cal. 1981)), revd. and remanded on other grounds 559 F.3d 1228 (Fed. Cir. 2009). [14]

---

[13] An additional factor sometimes mentioned by courts but not expressly included in this 10-factor list (although it might be thought to inhere in some of the listed factors) is whether either the party seeking anonymity or the opposing party is motivated by illegitimate motives. See, e.g., *Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 513 (M.D. Pa. 2007) (suggesting that plaintiffs' request to proceed anonymously might be considered to be improperly motivated if they sought anonymity to engage in a "shell game" and substitute different anonymous plaintiffs; but also suggesting that seeking to intimidate plaintiffs in a manner that would discourage them from exercising their rights would be an illegitimate motive for opposing anonymity), vacated in part on other grounds 620 F.3d 170 (3d Cir. 2010), vacated and remanded 563 U.S. ___, 131 S. Ct. 2958 (2011); *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 469 (E.D. Pa. 1997) (stating that improper reasons for seeking anonymity include gaining a tactical advantage, impairing the opposing party's ability to defend itself, delaying litigation, and increasing costs to the opposing party).

[14] Further illustrating the interrelatedness of factors, one court has observed that the consideration of whether the suit is challenging the actions of the government or private individuals

Considering the multiplicity and interrelatedness of factors to be considered and the breadth of the trial court's discretion in considering them, it is unsurprising that litigants have been permitted to proceed anonymously in a wide variety of cases.

a. *Highly Sensitive, Personal Information*

Plaintiffs are often permitted to proceed anonymously in cases involving highly personal or sensitive matters such as reproductive rights, sexual orientation or victimization, and health conditions, including mental illness, the disclosure of which might lead to stigmatization or ostracism; in such cases, no particularized showing of other specific harm is necessarily required. See, e.g., *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) (physical and sexual assault); *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001) (abortion); *Doe v. U.S. Air Force*, 812 F.2d 738, 739 n.1 (D.C. Cir. 1987) ("The district court granted plaintiff permission to file his complaint under a pseudonym because of the Air Force's belief that he is homosexual."); *Doe v. Penzato*, No. 3:10–CV–05154–MEJ (N.D. Cal., May 13, 2011) (granting motion for protective order) (sexual battery, human trafficking, and forced labor); *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) (bipolar disorder; the court noted a "theoretical possibility" that awareness of the illness would result in damage to the plaintiff's professional reputation); *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (hepatitis B from blood transfusion; "Although plaintiff has made no particularized showing of any specific harm or stigma to her caused by prosecuting the case under her own name * * * plaintiff's privacy concerns appear to be substantial ones").

b. *Physical Harm*

Another category of cases in which plaintiffs are often allowed to proceed anonymously involves situations in which disclosure of identity is deemed to pose a credible risk of physical harm. See, e.g., *Doe v. Stegall*, 653 F.2d at 186

(factor 5 listed above) addresses primarily the potential prejudice and unfairness to private individuals in being sued by anonymous individuals (see factor 6). *Doe v. Frank*, 951 F.2d 320, 323–324 (11th Cir. 1992).

(plaintiffs faced possible physical harm because of their espousal of unpopular religious views); *United States v. Doe*, 655 F.2d 920, 922 (9th Cir. 1980) (disclosure of prison inmate's identity posed a risk of "serious bodily harm"); *Anonymous v. Commissioner*, 127 T.C. at 94 (in tax deficiency case, risk of "severe physical harm" to the taxpayer and family outweighed the general public interest in knowing the taxpayer's identity); *Doe v. U.S. Witness Prot. Program*, 221 Ct. Cl. 940, 941–942 (1979) (denying motion to dismiss) (disclosure of identities of individuals in witness protection program posed risk of "danger" and "risk of serious harm").

### c. *Other Significant Harm*

There are also diverse cases in which courts have allowed litigants to proceed anonymously or pseudonymously to protect them against "other harms" that are deemed to be sufficiently severe. *Sealed Plaintiff v. Sealed Defendant*, *supra* at 190. In these cases the courts have "protected social, psychological, and economic interests; they have not always demanded proof of threats to the plaintiff's physical security nor have they always required threats to privacy rights." Steinman, "Public Trial, Pseudonymous Parties: When Should Litigants Be Permitted To Keep Their Identities Confidential?", 37 Hastings L.J. 1, 75 (1985) (fn. ref. omitted).

### i. *Social or Professional Stigma*

Some cases grant anonymity in large part because of the threat of social or professional stigma to such diverse litigants as attorneys and doctors suing to enjoin disciplinary proceedings,[15] a job applicant suing to protect her reputation,[16] public aid recipients,[17] and a corporate defendant sued by insiders.[18] Sometimes the risk of stigma is height-

---

[15] See, e.g., *Doe v. State Bar of Cal.*, 415 F. Supp. 308, 309 n.1 (N.D. Cal. 1976) (noting that the plaintiff attorney had been permitted to maintain his anonymity because of the possible adverse impact on his reputation), affd. 582 F.2d 25 (9th Cir. 1978).

[16] See, e.g., *Doe v. U.S. Civil Serv. Commn.*, 483 F. Supp. 539 (S.D.N.Y. 1980) (unsuccessful job applicant for White House fellowship suing with respect to derogatory and prejudicial allegations in her file).

[17] See, e.g., *Campbell v. USDA*, 515 F. Supp. 1239, 1245 (D.D.C. 1981) (Social Security income applicant permitted to sue anonymously to compel promulgation of regulations "to protect sensitive personal information and to shield her from feared abuse and harassment from her neighbors, the media, and the public").

[18] See *Doe v. A Corp.*, 709 F.2d 1043, 1044 n.1 (5th Cir. 1983) (noting with apparent approval that the District Court had granted pseudonymity "To prevent identification of the company and the possible disclosure of confidential information concerning its affairs").

ened because the party seeking anonymity belongs to a particularly vulnerable group, such as juveniles [19] or illegal immigrants. [20]

### ii. *Economic Retaliatory Harm*

Some cases permit litigants to proceed anonymously or pseudonymously to protect them against possible economic retaliatory harm. For instance, the Court of Appeals for the Ninth Circuit concluded that "extraordinary" economic harm justified allowing Chinese workers, employed in the Mariana Islands, to proceed pseudonymously in their suit brought under the Fair Labor Standards Act of 1938 (FLSA), ch. 676, 52 Stat. 1060 (current version at 29 U.S.C. secs. 201–219 (2006)). *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1062. The Court of Appeals contrasted the "extreme nature of the retaliation" faced by these workers, which included termination of employment, deportation, and possible arrest upon their return to China, with the consequences faced by "typical" FLSA plaintiffs, stating: "While threats of termination and blacklisting are perhaps typical methods by which employers retaliate against employees who assert their legal rights, the consequences of this ordinary retaliation to plaintiffs are extraordinary." *Id.* at 1069, 1071; see also *Gomez v. Buckeye Sugars*, 60 F.R.D. 106, 106 (N.D. Ohio 1973) (permitting FLSA plaintiff employees to proceed anonymously "in order to safeguard against any possible reprisals by their employers that might result from the filing of this lawsuit."). But see *S. Methodist Univ. Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (denying anonymity for women lawyers who had joined a title VII sex discrimination suit against two law firms). [21]

---

[19] See, e.g., *United States v. Doe*, 385 F. Supp. 902, 903 (D. Ariz. 1974) (juvenile delinquent's identity protected because "these are juvenile proceedings").

[20] See, e.g., *Lozano v. City of Hazleton*, 496 F. Supp. 2d at 514 ("The highly legal nature of the issues here, combined with the intense public interest and strong level of emotion connected with the issue mean that the undocumented immigrants who seek to participate in this action face extraordinary circumstances that require anonymity if they hope to proceed without facing unsupportable burdens.").

[21] The holding in *S. Methodist Univ. Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979), appears predicated partly on the court's statement that one characteristic common to all cases affording plaintiffs anonymity was that the plaintiffs "divulged personal information of the utmost intimacy". Two years later the Court of Appeals clarified that its opinion in *S. Methodist Univ. Association of Women Law Students* did not purport

Continued

In *Does I Thru XXIII v. Advanced Textile Corp.*, *supra* at 1068, the Court of Appeals held that in evaluating the severity of potential retaliatory action, the trial court should take into consideration, among other factors, the severity of the threatened harm, the reasonableness of the party's fears, and the party's vulnerability to harm. Applying this test, the Court of Federal Claims permitted Native American plaintiffs to proceed anonymously in a Tucker Act proceeding that pitted their personal interests against the interests of the communities of which they were members. *Wolfchild v. United States*, 62 Fed. Cl. at 521. Citing the plaintiffs' risk of economic harm through the loss of per capita payments and their risk of losing membership in their communities if their identities were disclosed, the court found that the threatened harm was sufficiently severe to justify their request for anonymity. *Id.* at 553. The court also noted that letting these plaintiffs proceed anonymously accorded with the practice of the Bureau of Indian Affairs to provide anonymity for Native Americans in membership disputes with their communities. *Id.* at 554.

In so-called qui tam actions arising under the False Claims Act, 31 U.S.C. secs. 3729–3733 (2006), plaintiffs sometimes seek to protect their identities on the basis of feared retaliatory harm.[22] The results have been mixed. Compare *United States ex rel. Permison v. Superlative Techs., Inc.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007) (in a qui tam suit against the plaintiff's former employer, denying a request to seal the complaint or to grant anonymity because although "fear of retaliation is not entirely implausible, it is certainly vague and hypothetical at best"), and *United States v. Bon Secours*

---

to establish the "utmost intimacy" consideration as a prerequisite to bringing an anonymous suit. *Doe v. Stegall*, 653 F.2d 180, 185–186 (5th Cir. 1981) (permitting child plaintiffs to proceed anonymously in action challenging constitutionality of religious observances in public schools). The court indicated that there was "no hard and fast formula for ascertaining whether a party may sue anonymously" but that the decision "requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* at 186.

[22] "Qui tam" is shorthand for the Latin expression "qui tam pro domino rege quam pro se ipso in hac parte sequitur", meaning "who as well for the king as for himself sues in this matter". Black's Law Dictionary 1368 (9th ed. 2009). Private individuals may bring qui tam actions on behalf of the United States to recover damages against persons who have submitted false or fraudulent claims to the Government. *Id.* Such an action allows the plaintiff to recover a portion of any money recovered by the Government in the action. 31 U.S.C. sec. 3730(d) (2006). By statute, a qui tam complaint remains under seal for at least 60 days after it is filed. *Id.* sec. 3730(b)(2).

*Cottage Health Servs.*, 665 F. Supp. 2d 782 (E.D. Mich. 2008) (denying a qui tam plaintiff's request to maintain the seal in the case or alternatively to redact identifying information from the record, concluding that the plaintiff's fear of retaliation by her current or future employers was insufficient to overcome the strong presumption favoring public access to judicial records), with *United States ex rel. Doe v. Boston Scientific Corp.*, No. 4:07–CV–2467 (S.D. Tex., July 2, 2009) (granting a qui tam plaintiff's request to keep her identity under seal until the case was resolved because the plaintiff, who was formerly employed by a medical device company that was the subject of her qui tam complaint, feared that revealing her identity would cause her husband, who worked in the same industry, to be fired and that he would be unable to obtain new employment).

Despite some similarities, qui tam cases and tax whistleblower cases differ in important ways. Unlike the False Claims Act, section 7623 includes no provision for temporarily sealing the record. But see sec. 7461(b)(1) (authorizing the Tax Court to make any provision necessary to prevent the disclosure of "confidential information"). And unlike the False Claims Act, see 31 U.S.C. sec. 3730(h) (2006), section 7623 contains no antiretaliatory provisions, see *infra* Discussion, Part III.C.1.c.iii. Whereas the defendant in a qui tam case will generally be an individual or nongovernmental entity, the respondent in a tax whistleblower case will always be the Commissioner of the IRS, who is aware of the whistleblower's identity. The subject of a tax whistleblower claim, unlike the defendant in a qui tam case, is not a party to the case and may not even be aware of the case. [23] Finally, a tax whistleblower case under section 7623(b), unlike a qui tam case, is an appeal from an administrative proceeding in which the whistleblower's confidentiality typically will have been maintained.

---

[23] Neither sec. 7623 nor this Court's Rules contain any express provision for notice or intervention with respect to the subject of a whistleblower claim in a Tax Court proceeding to review a whistleblower award determination. Cf. sec. 6015(e)(4) (providing that if an individual petitions the Tax Court to determine relief from joint and several liability on a joint return, the nonrequesting spouse is to receive adequate notice and an opportunity to become a party to the proceeding); Rule 325 (regarding notice and intervention by the nonpetitioning spouse in an action to determine relief from joint and several liability on a joint return).

### iii. *Confidential Informants*

Some courts have permitted confidential informants, litigating in that capacity, to proceed anonymously. In particular, when a tax whistleblower brings an action under the Tucker Act, the Court of Federal Claims sometimes allows the claimant to proceed anonymously as a "confidential informant". See *Confidential Informant v. United States*, 46 Fed. Cl. 1 (2000); *Confidential Informant 92–95–932X v. United States*, 45 Fed. Cl. 556 (2000).[24] Similarly, with little discussion a District Court recently affirmed a magistrate judge's determination that a confidential informant should be allowed to proceed anonymously in an action stemming from a city's disclosing the confidential informant's identity to a newspaper. *DKT v. City of Kokomo*, 1:10–cv–00066–TWP–MJD (S.D. Ind., Feb. 17, 2011).

Although not determinative of petitioner's request to litigate anonymously, these cases are indicative of our legal system's general solicitude for confidential informants. For instance, various provisions of the Internal Revenue Code generally prohibit the IRS from disclosing the identities of confidential informants. See, e.g., sec. 6103(d)(1), (h)(4), (i)(6).

In addition, in court proceedings the so-called informer privilege generally permits the Government to "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."[25] *Id.* As one court has explained, the informer privilege

---

[24] The Court of Federal Claims originally filed these decisions under seal and later made the decisions public after making redactions requested by the parties. See *Confidential Informant v. United States*, 46 Fed. Cl. 1, 1 (2000); *Confidential Informant 92–95–932X v. United States*, 45 Fed. Cl. 556, 556 (2000); see also *Jarvis v. United States*, 43 Fed. Cl. 529 (1999) (employing a similar procedure). There is also pending in the Court of Federal Claims another such case captioned *Confidential Informant 59–05071 v. United States*, No. 11–153C (Fed. Cl., filed Mar. 10, 2011).

[25] The informer privilege is not absolute but is to be balanced against fundamental requirements of fairness and disclosure in the litigation process. *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957). Although *Roviaro* was a criminal case, in civil cases the doctrine of informer privilege may apply when it appears that the informant will be the target of retaliatory actions by the person who is the subject of the information. See, e.g., *Socialist Workers Party v. Attorney Gen. (In re United States)*, 565 F.2d 19, 22 (2d Cir. 1977). "Indeed, there is ample authority for the proposition that the strength of the privilege is greater in civil litigation than in criminal."

is an ancient doctrine with its roots in the English common law, founded upon the proposition that an informer may well suffer adverse effects from the disclosure of his identity. Illustrations of how physical harm may befall one who informs can be found in the reported cases. However, the likelihood of physical reprisal is not a prerequisite to the invocation of the privilege. Often, retaliation may be expected to take more subtle forms such as economic duress, blacklisting or social ostracism. The possibility that reprisals of some sort may occur constitutes nonetheless a strong deterrent to the wholehearted cooperation of the citizenry which is a requisite of effective law enforcement.

Courts have long recognized, therefore, that, to insure cooperation, the fear of reprisal must be removed and that "'the most effective protection from retaliation is the anonymity of the informer.'" * * *

[*Socialist Workers Party v. Attorney Gen. (In re United States)*, 565 F.2d 19, 22 (2d Cir. 1977); citations omitted; quoting *Wirtz v. Contl. Fin. & Loan Co.*, 326 F.2d 561, 563–564 (5th Cir. 1964).]

Although no privilege similar to the informer privilege shields the identities of informants who speak to private plaintiffs or their counsel (as opposed to Government counsel), courts employ a balancing test to protect confidential informants in such circumstances. See Wohl, "Confidential Informants in Private Litigation: Balancing Interests in Anonymity and Disclosure", 12 Fordham J. Corp. & Fin. L. 551, 575–579 (2007). For instance, in a case brought by private individuals against a company under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. secs. 1961–1968 (2006), the District Court denied a defendant's motion to compel production of documents that would reveal the identities of the plaintiff's confidential sources within the company. *Mgmt. Info. Techs., Inc. v. Alyeska Pipeline Serv. Co.*, 151 F.R.D. 478 (D.D.C. 1993). Writing for the court, Judge Sporkin described the risks of retaliation that whistleblowers face:

The case law, academic studies, and newspaper accounts well document the kind of treatment that is usually visited upon public and private employees who speak out as a matter of conscience on issues of public concern. For example, a six-year study on whistleblowers by Myron Peretz Glazer and Penina Migdal Glazer details the full spectrum of management retaliation against ethical resistors who speak out against company or government policy and the long-term adverse consequences such employees can face. See, Myron Peretz Glazer and Penina Migdal Glazer, *The Whistleblowers: Exposing Corruption in Government and Industry* 231 (1990) (study of sixty-four whistleblowers showed significant percentage

---

*Id.*

"remain out of work or underemployed, bitter about their punishment, and uncertain of ever being able to restore their lives fully"). See also, *Hathaway v. Merit Systems Protection Bd.*, 981 F.2d 1237 (Fed. Cir. 1992) (upholding determination by Merit Systems Protection Board that employee was threatened with removal and unsatisfactory performance because disclosure of questionable employment practices); United States Merit Systems Protection Board, Office of Systems Review and Studies, *Whistleblowing and the Federal Employee: Blowing the Whistle on Fraud, Waste, and Mismanagement—Who Does It and What Happens* 3 (Oct. 1981) (noting that while retaliation is not universal, a significant percentage of federal employees who reported waste or abuse felt they were adversely affected by speaking out); Matthew L. Wald, *Whistleblower at Nuclear Laboratory Was Disciplined, Labor Dept. Rules*, N.Y. Times, Feb. 5, 1992 at A12 (describing episode where after speaking out on television, employee of government contractor was first isolated from other workers and supervisors and then transferred to [a] room containing radioactive waste).

The motive for retaliation by employers is obvious:

"To their detractors, whistleblowers are viewed as 'snitchs', 'stool pigeons', or 'industrial spys' [sic] who are willing to publicly embarrass their co-workers and their companies in order to satisfy their political, ethical, moral, or personal agendas. Such employees not only wish to hurt their companies, their detractors argue, but also wish to keep their jobs." * * *
[*Id.* at 481–482, quoting Westman, Whistleblowing: The Law of Retaliatory Discharge vii (1991).]

According to one report, as of 2007 there were 36 Federal statutes with explicit provisions to protect public and private employees who report violations of law. Wohl, *supra* at 557. For instance, the False Claims Act contains an antiretaliatory provision. See 31 U.S.C. sec. 3730(h). Moreover, almost all the States have enacted statutes protecting employees in the public and/or private sectors who report illegal conduct. Wohl, *supra* at 557. In stark contrast, section 7623 contains no antiretaliatory provisions.

It is the IRS' stated policy to treat tax whistleblowers as confidential informants. The Internal Revenue Manual (IRM) states: "To the extent that the IRS Whistleblower Office determines that an individual is a 'whistleblower' under IRC section 7623, such individual shall be deemed to be a confidential informant whose identity shall be protected in accordance with IRC section 6103(h)(4)." 6 Administration, IRM (CCH), pt. 25.2.2.11, at 223,217 (June 18, 2010). The regulations under section 7623 state: "No unauthorized person will be advised of the identity of an informant." Sec. 301.7623–1(e), Proced. & Admin. Regs. In published guidance

to the public on how to file tax whistleblower claims, the IRS states that it "will protect the identity of the claimant to the fullest extent permitted by law." Notice 2008–4, sec 3.06, 2008–1 C.B. 253, 255. [26]

### 2. *Analysis of Petitioner's Request for Anonymity*

In deciding whether petitioner should be allowed to proceed anonymously, we take into account not only petitioner's legitimate privacy interests as a confidential informant, but also the nature and severity of the specific harm asserted to arise from disclosing petitioner's identity, and we balance that potential harm against the relevant social interests. See, e.g., *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190– 191; *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1068; *Wolfchild v. United States*, 62 Fed. Cl. at 521.

### a. *Severity of Harm*

Petitioner asserts that professional stigma, retaliation, and economic duress will result if petitioner's identity is disclosed. As suggested by the preceding discussion, fears of such harm befalling a confidential informant are reasonable although necessarily difficult of proof. As a tax whistleblower, petitioner is especially vulnerable to such harm, we believe, considering the absence of antiretaliatory provisions in section 7623.

Petitioner's counsel represents, and respondent does not dispute, that petitioner is of an age and station in life that necessitate continued employment. The record reasonably supports the conclusion that disclosing petitioner's identity could adversely affect not merely petitioner's current employment but also petitioner's future employability. In particular, the record strongly suggests that petitioner acquired the information in question not by chance but rather in the normal course of employment for X and that petitioner was privy to internal deliberations and communications regarding the events that allegedly gave rise to X's underpayment. Revealing petitioner's status as a tax whistleblower in these circumstances would likely cause severe damage to peti-

---

[26] This notice also states that in some circumstances, such as when the claimant is needed as a witness in a judicial proceeding, it may be necessary to reveal the claimant's identity but that the IRS will make "every effort" to inform the claimant before proceeding in such a case. Notice 2008–4, sec 3.06, 2008–1 C.B. 253, 255.

tioner's standing in the professional community that provides petitioner's customary source of livelihood and could well jeopardize petitioner's employment.

Moreover, the fact that petitioner is no longer employed by X does not immunize petitioner from the possibility of retaliation. If petitioner seeks other employment in the future, any prospective employer could require petitioner to provide names of previous employers, including X, which could jeopardize petitioner's chances by branding petitioner a former whistleblower. Finally, petitioner may someday find it desirable or necessary to seek reemployment with X only to face retaliation as a whistleblower. See *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972) (finding for similar reasons that an informer's privilege was available to the Government with respect to the defendant's former employees in a case brought under the FLSA).[27]

In sum, petitioner has demonstrated a risk of harm that far exceeds in severity mere embarrassment or annoyance. The retaliation, professional ostracism, and economic duress which petitioner reasonably fears are, we believe, no less severe than the harm posed to attorneys and doctors suing to enjoin disciplinary proceedings, unsuccessful job applicants suing to protect their reputation, public aid recipients, or Native Americans joining in a lawsuit pitting their personal interests against those of their communities—all cases in which plaintiffs have been allowed to proceed anonymously. See cases discussed *supra* Part III.C.1.c.i. and ii. But whether petitioner's harm is sufficiently severe to justify granting petitioner's request for anonymity depends upon additional considerations, including the social interests at stake.

---

[27] It is possible that other judicial remedies, such as claims for tortious interference with contract of business relations and defamation, might be available to petitioner if X were to attempt to "poison the well" for petitioner. See *United States ex rel. Permison v. Superlative Techs., Inc.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007) (commenting on possible remedies potentially available to a qui tam plaintiff for whom the antiretaliatory provisions of the False Claims Act were inapplicable). But even these types of possible remedies would be unavailing where a prospective employer learned of petitioner's whistleblowing from a source other than X, e.g., from this Court's public records.

b. *Social Interests*

The social interests at stake are mixed. On the one hand, for reasons previously discussed, there is strong social interest in protecting petitioner's identity as a confidential informant. On the other hand, the people generally have a right to know "who is using their courts". *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Because we have held that respondent is entitled to summary judgment on a threshold legal issue which does not depend to any appreciable extent on petitioner's identity, we believe that the public's interest in knowing petitioner's identity is relatively weak. See, e.g., *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190–191; *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d at 1072–1073; *Lozano v. City of Hazleton*, 496 F. Supp. 2d at 512; *Doe v. Del Rio*, 241 F.R.D. at 158 ("[W]here a lawsuit * * * seeks to raise an abstract question of law that affects many similarly situated individuals, the identities of the particular parties bringing the suit may be largely irrelevant to the public concern with the nature of the process."); *Doe v. Hartz*, 52 F. Supp. 2d 1027, 1046–1047 (N.D. Iowa 1999).[28]

c. *Other Considerations*

The parties agree that petitioner's identity as a whistleblower has been kept confidential so far. There is no suggestion that petitioner has illegitimate motives in requesting anonymity. And because respondent already knows petitioner's identity, he will not be prejudiced if petitioner proceeds anonymously. He does not assert otherwise.

Moreover, granting petitioner's request for anonymity accords with the Whistleblower Office's general administrative practice, as applied to petitioner, of keeping whistleblowers' identities confidential. See *Wolfchild v. United States*, 62 Fed. Cl. at 554 (citing such a consideration as a favorable factor in permitting plaintiffs to proceed anonymously). Respondent suggests that by pursuing judicial review, petitioner has chosen to relinquish the confidentiality accorded by the Whistleblower Office. Respondent's take-it-

---

[28] It is unnecessary for us to decide, and we do not decide, to what extent the balancing test might become more onerous for a whistleblower seeking anonymity in a case in which the whistleblower's identity were of greater public interest.

or-leave-it approach to confidentiality improperly minimizes the practical value of judicial review, which is an integral part of the scheme under section 7623(b). Respondent's approach, which we cannot say is disinterested, would confront claimants with a dilemma of either forfeiting confidentiality to seek judicial review or forfeiting judicial review. The likely upshot would be a chilling effect on some claimants who have a compelling need to proceed anonymously. This result would be at odds with the ostensible legislative purpose of encouraging tax whistleblower claims and promoting public confidence, through judicial oversight, in the administration of the tax whistleblower award program.

### 3. *Conclusion: Granting Petitioner Anonymity*

We conclude that granting petitioner's request for anonymity strikes a reasonable balance between petitioner's privacy interests as a confidential informant and the relevant social interests, taking into account the nature and severity of the asserted harm from revealing petitioner's identity and the relatively weak public interest in knowing petitioner's identity. Consequently, pursuant to section 7461(b)(1) and Rule 103(a) we shall permit petitioner to proceed, effectively anonymously, as a "whistleblower". [29]

In furtherance of this decision, we shall order the parties to redact from the existing record and from any future submissions any information that would tend to reveal petitioner's identity. Furthermore, because of concerns that revealing X's identity could enable petitioner's identity to be deduced, we shall also order the parties to redact from the record X's name and any identifying information regarding X. [30]

### D. *Denying Petitioner's Motion To Seal the Record*

We believe that permitting petitioner to proceed anonymously and requiring redaction of identifying information

---

[29] We do not mean to suggest that this balancing test would or should necessarily result in anonymity for all tax whistleblowers in this Court. Ultimately, absent any legislative directive to the contrary, each request to proceed anonymously must stand upon its own.

[30] Such redactions should encompass those mandated by Rule 27 as well as any additional redactions necessary and appropriate to protect the identity of petitioner and conceal the identity of X. We do not consider in this case the extent, if any, to which the identity of the subject of a whistleblower claim should be protected in a case in which disclosing the subject's identity would not tend to jeopardize the whistleblower's legitimate privacy interests.

under the measures just described will adequately protect petitioner's legitimate privacy interests without the need to seal the record, thereby preserving in large measure the public's ability to follow the legal proceedings in this case. Consequently, we shall deny petitioner's motion to seal the record. [31]

To reflect the foregoing,

> *An appropriate order will be issued, and order and decision will be entered for respondent.*

Reviewed by the Court.

COLVIN, COHEN, VASQUEZ, GOEKE, WHERRY, KROUPA, GUSTAFSON, PARIS, and MORRISON, *JJ*., agree with this majority opinion.

––––––––––––––––

HALPERN, *J*., concurring: "Snitches get stitches." No doubt we can infer Congress' awareness of that old piece of advice when it provided a public forum (the Tax Court) in which a whistleblower might seek review of her claim that the Commissioner erred in not paying her for fingering a tax cheat or detecting someone's underpayment of tax. While the majority has done an admirable job in assembling the law regarding confidentiality, I do not believe that it has adequately considered whether, in the face of Congress' choice of a public forum for such actions, we should craft what amounts to a rule of law shielding whistleblowers still in the workforce from identification.

The evidence the majority relies on to support its conclusion that identifying petitioner could adversely affect her [1] employment prospects is petitioner's affidavit that her present employer, and any prospective employer, would not want to employ someone known to be a snitch. Majority op. pp. 185, 203–204. That conclusion seems correct, but not because petitioner has proven that she, particularly, among whistleblowers remaining in the workforce, would face employment discrimination were we to reveal her identity,

––––––––

[31] We shall not lift the temporary seal, however, until after the parties have been provided an opportunity to redact the record pursuant to the Court's order.

[1] I use feminine personal pronouns as a convenience with no intent to identify petitioner's gender.

but because her claim rings true, as a matter of common sense, for all whistleblowers remaining in the workforce whose identity is revealed. While the majority suggests that the public's interest in knowing a whistleblower's identity might be stronger in a case, unlike this one, that is not disposed of on respondent's motion for summary judgment, the majority has identified a class of whistleblowers (those in the workforce) whose requests for anonymity would, I assume (following the majority's opinion), be granted, at least in the early stages of a case. [2] Without contradicting this case, what additional evidence might we demand of the next whistleblower coming before us, expressing a genuine fear of employment discrimination, and asking for at least temporary anonymity?

The privacy protections afforded by statute to those participating in, or affected by, whistleblower actions may be inadequate. For instance, the National Taxpayer Advocate recommended to Congress in 2010 that it amend the Internal Revenue Code to require redaction of third-party return information in administrative and judicial proceedings relating to whistleblower claims. National Taxpayer Advocate, 2010 Annual Report to Congress 396–399 (2010) (Legislative Recommendation: *Protect Taxpayer Privacy in Whistleblower Cases*). One could argue that Congress intended whistleblowers to bear the privacy risks inherent in asking for review of their whistleblower claims in a public forum (the Tax Court). But if Congress did not intend that, and because we are writing a rule rather than disposing of a single case, I think it best we leave the fix to Congress.

I have concurred in the result in this case because I think that we should give whistleblowers contemplating a section 7623(b)(4) action fair notice that we will not automatically grant anonymity upon a claim of possible employment discrimination. Were we to decide this case as I would, dissatisfied whistleblowers with a fear of employment discrimination would, before filing a petition with the Court, weigh the expected dollar return from commencing a section 7623(b)(4) action against the expected cost (measured in dollars) of the disadvantages associated with the public disclo-

---

[2] That is because the risk of identification as a whistleblower and, thus, the risk of employment discrimination, exists from the beginning of a case, since, as an administrative matter, to identify whistleblower cases, we add to the docket number of each such case the letter "W".

sure of information that ordinarily becomes part of the case file and the public record in a Tax Court case. Some whistle-blowers may find that the expected costs outweigh the expected benefits.[3] Until (and unless) Congress acts, I believe that is the best we can offer.

WHERRY and HOLMES, *JJ*., agree with this concurring opinion.

---

[3] I do not, however, rule out anonymity upon a sufficient, fact-specific showing. See, e.g., *Anonymous v. Commissioner*, 127 T.C. 89 (2006).